UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| LESTER LAWSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 07-17-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment filed by Plaintiff Lester Lawson ("Lawson") and Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). [Record Nos. 5 and 9] Through this action, Lawson seeks to reverse the decision of an administrative law judge ("ALJ") concluding that he is no longer entitled to Disability Insurance Benefits. However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed.

For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Lawson.

## I.       Legal Standard

Review of a claimant's social security disability determination following an award of Disability Insurance Benefits is made in accordance with an eight-step analysis. First, if the claimant is engaged in substantial gainful activity, he will be deemed no longer disabled. 20

C.F.R. § 404.1594(f)(1).  Second, if the claimant can show that he has an impairment which meets or equals the severity of a listed impairment, he will be considered disabled.  20 C.F.R. § 404.1594(f)(2).  Third, the Commissioner seeks to determine if the claimant's medical condition has improved.  20 C.F.R. § 404.1594(f)(3).  Fourth, the Commissioner considers whether any medical improvement is related to the claimant's ability to do work.  20 C.F.R. § 404.1594(f)(4).  Fifth, if the answers to step three and four were "no," the Commissioner determines whether an exception to the medical improvement standard exists.  20 C.F.R. § 404.1594(f)(5).  Sixth, if the answer to four or five was "yes," the Commissioner determines whether claimant has a severe impairment.  20 C.F.R. § 404.1594(f)(6).  Seventh, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the Claimant's residual function capacity ("RFC")[1] and relevant past work to determine if he can do past work.  If he can, he is not disabled.  20 C.F.R. § 404.1594(f)(7).  Finally, if the claimant cannot return to his past work, the Commissioner determines whether the claimant can perform any other work.  20 C.F.R. § 404.1594(f)(8).

To meet the burden of showing the claimant could perform work that is available in the national economy, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Howard*, 276 F.3d

---

[1]     The RFC is an assessment of the claimant's remaining capacity for work once his limitations are taken into account.  20 C.F.R. § 404.1560.  It is meant to describe the claimant's residual abilities or what the claimant can and cannot do, and not from what maladies a claimant suffers.  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002).

-2-

at 238 (quoting *Varley v. Sec'y of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987)). If he cannot perform other work, the Commissioner will find the claimant disabled.

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Wyatt v. Sec'y of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lashley v. Sec'y of Health and Human Services*, 708 F.2d 1048, 1053 (6th Cir. 1983). While significant deference is accorded to the ALJ, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must be taken into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Garcia v. Sec'y of Health and Human Services*, 46 F.3d 552, 555 (6th Cir. 1995); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of*

*Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Sec'y of Health and Human Services*, 893 F.2d 106, 108 (6th Cir. 1989).  Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).

In determining whether the ALJ's opinion is supported by substantial evidence, courts may not "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).  It is the job of the ALJ to make credibility findings after listening to testimony, observing the claimant's demeanor, and evaluating the testimony in light of the written evidence.  Credibility determinations are particularly within the province of the ALJ. *Gooch v. Sec'y of Health and Human Services*, 833 F.2d 589 (6th Cir. 1987); *Villarreal v. Sec'y of Health and Human Services*, 818 F.2d 461, 464 (6th Cir. 1987).

## II.        The Proceedings Before The ALJ

Lawson previously was awarded Disability Insurance Benefits.  However, on August 10, 1999, he was notified that his benefits would terminate in October 1999, because the Commissioner determined that his condition had improved.  Lawson appealed this decision.

On September 7, 2004, an administrative hearing was held before ALJ Peter M. Davenport in Hazard, Kentucky. [Transcript at pp. 22-30; ("Tr., p. ___")]  During this hearing, the ALJ received testimony from Lawson, Daryl Martin, a vocational expert ("VE"), and Dixie Moore, Ph.D., a medical expert.  Thereafter, the ALJ issued a decision finding that Lawson was no longer disabled and upholding the cessation of benefits. [Tr., p. 22-30]  He concluded that, although Lawson had an impairment or combination of impairments considered severe, the

-4-

medically determined impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P. Regulation No. 4.  [ Tr., p. 29]  Based on testimony from the VE, he further concluded that Lawson was capable of performing a significant number of jobs in the national economy, including his former work.  [Tr., p. 29]

**III.     Discussion**

Lawson's sole argument is that the ALJ erred in finding that he did not meet the mental impairment set forth in section 12.05(C) of the Listing of Impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.  He asserts that his documented IQ scores, the findings of Michelle Amburgey, and his treating physician, Dr. Dennis Sandlin, establish that he suffers from mental retardation sufficient to satisfy section 12.05(C).  Conversely, the Commissioner contends that the ALJ properly determined that the evidence of record does not establish that Lawson suffers from a mental impairment that satisfies section 12.05(C).  Specifically, he notes that the findings of Dr. Dixie Moore, Dr. Suzann O'Koon and Dr. Christopher Catt support the ALJ's findings.

To make a claim under Listing 12.05, "a claimant must prove: (1) the claimant suffers from significantly subaverage general intellectual functioning, (2) the claimant suffers from deficits in adaptive functioning, (3) such deficits initially manifested during the developmental period (*i.e.*, before age 22), and (4) one of the four criteria (A, B, C, or D) is met." *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x. 868, 872 (6th Cir. 2003) (citation omitted); *accord Burrell v. Commissioner of Soc. Sec.*, No. 99-4070, 2000 WL 1827799, at **2 (6th Cir. Dec. 8 2000) ("receiving benefits under Listing 12.05 also requires a 'deficit in adaptive functioning'"); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); *Lowery v. Sullivan*, 979 F.2d 835,

-5-

837 (11th Cir. 1992); *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986); *Strunk v. Heckler*, 732 F.2d 1357, 1360 (7th Cir. 1984). Thus, an IQ score and a diagnosis of mild retardation do not, *ipso facto*, mean that a claimant meets the requirements of Listing 12.05.

The ALJ's determination that Lawson did not meet all of the requirements for Listing 12.05(C) is supported by substantial evidence. First, the evidence does not support the onset of "significantly subaverage general intellectual functioning" prior to age 22. Lawson relies, in part, on a notation contained in his school records indicating that he was "very retarded." However, none of Lawson's intelligence tests were performed "contemporaneous with his developmental period." *See Carmack v. Barnhart*, 147 F. App'x 557 (6th Cir. 2005). The earliest IQ test in the record was performed on December 19, 2000, by Michelle Amburgey, a certified clinical psychologist, after Lawson was notified that his benefits would be terminated. She noted that these tests revealed a verbal IQ of 72, a performance IQ of 67, and a full scale IQ of 67. After examining the school records and the test results, she opined that Lawson had "mild mental retardation" and "exhibited deficits in adaptive behavior and significant subaverage general intellectual functioning prior to age 22." [Tr., p. 383] However, she acknowledged that his test scores may have been largely impacted by his "difficulty hearing during the session" and his "visual problems as well." [Tr., p. 344] Moreover, Amburgey found that Lawson "was able to comprehend and follow through with simple instructions and would likely be able to do so within a work setting [and] . . . that [h]e seems capable of relating cooperatively with supervisors and co-workers. [Tr., p. 344]

Although Lawson contends that the findings of his treating physician support his claim, it is notable that Dr. Sandlin did not conclude that Lawson suffered from "significantly subaverage general intellectual functioning."  Instead, he simply noted that Lawson had a "low educational level" and "limited intellect." [Tr., p. 359] And while Dr. Sandlin opined that Lawson could not sustain gainful employment and identified functional limitations of disabling severity, the ALJ rejected his conclusions because they were "not well-supported by medically acceptable clinical and laboratory diagnostic techniques and are inconsistent with the other substantial evidence in the record." [Tr., p. 28]

Dr. Christopher Catt examined Lawson on June 16, 2004, finding that he had a verbal IQ of 65, a performance IQ of 70, and a full scale IQ of 64.  However, he concluded that Lawson was functioning at a higher level than the IQ scores reflected because Lawson gave up easily and put forth a poor effort.  Therefore, Dr. Catt opined that Lawson suffered from borderline intellectual functioning, not mental retardation. [Tr., p. 474] Dr. Catt's conclusion that Lawson's IQ scores were invalid is also supported by the findings of Dr. Dixie Moore and Dr. Suzann O'Koon.  Both Dr. Moore and Dr. O'Koon concluded that Lawson's history of vision problems most likely affected his performance on the IQ tests. [Tr., p. 493, 521]  Dr. O'Koon noted, in particular, that Lawson did not have his glasses at the time the tests were given. [Tr., p. 521] These facts indicate that Lawson was not suffering from "significantly subaverage general intellectual functioning" and support the ALJ's finding that Lawson did not meet the requirements for Listing 12.05(C).

Lawson has also failed to present sufficient evidence that he met the "adaptive functioning" requirement of Listing 12.05(C). Dr. O'Koon specifically noted that Lawson's test scores appeared to be invalid because the evidence failed to demonstrate that he had "deficits in adaptive functioning." [Tr., p. 522] In support, Dr. O'Koon noted that Lawson started working at age fourteen and had "even made some of his own money for spending as early as age five." [Tr., p. 522] Dr. Moore also found that Lawson's work history belie his claim of mental retardation. [Tr., p. 495-96]

The evidence indicates that Lawson has a significant work history as a roof bolter in the coal mining industry, which demonstrates his ability to perform semi-skilled to skilled tasks. In addition, Lawson's own statements establish that, through the years, he has been able to drive, use the telephone, visit with his pastor, attend church regularly, watch television, volunteer at his son's school, fix food for himself and others, and do some household chores, such as mow the grass and tend a garden. [Tr., p. 255-66, 271-282, 285] In summary, substantial evidence supports the conclusion that Lawson has no "deficits in adaptive functioning" and supports the ALJ's conclusion that he did not meet the requirements for Listing 12.05(C). For the reasons discussed above, the Court finds that Lawson has failed to provide any basis for reversing the decision of ALJ Davenport or for remanding the case for further proceedings.

**IV.    Conclusion**

After reviewing the briefs submitted by the parties and the record before the ALJ, the Court concludes that the ALJ's opinion is supported by substantial evidence. Accordingly, it is hereby

-8-

**ORDERED** as follows:

1.      Claimant's Motion for Summary Judgment [Record No. 5] is **DENIED**;

2.      The Commissioner's Motion for Summary Judgment [Record No. 9] is **GRANTED**; and

3.      The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 19th day of July, 2007.

Signed By:

*Danny C. Reeves* DCR

United States District Judge